Thank you and good morning, Your Honors. May it please the Court, Randolph Gaugh for the AdTrader plaintiffs. And I would like to reserve three minutes of my time for rebuttal. Your Honor, today in arguing that the District Court made an unreasonable fee award to AdTrader, there are three particular issues that I'd like to focus on in particular. The first concerns the specific prejudice to AdTrader in the context of the District Court's reliance upon Google's response to Interrogatory 24. The second is that even if all of Google's evidence is given full weight and merit, there's still a considerable absence of evidence which draws the conclusion that AdTrader's efforts preserved or increased the DVM refunds. And third and finally, if I have time, I'll touch upon the negative public policy implications. I'll start with the jurisdictional issue, which is this lawsuit isn't over in the District Court. Isn't that correct? Yes, Your Honor. There's no final judgment. And so you need to fit within some kind of exception for an interlocutory judgment. And so why don't you explain why we would have jurisdiction when the case isn't over and there's no final judgment? Sure, Your Honor. I believe this court has jurisdiction because of the Supreme Court's ruling in Trustees v. Greenough and the progeny, you know, that have applied that case. In Greenough, the Supreme Court held that a final award of fees from a fully formed common fund, quote, you know, was an order that, quote, having a distinct and independent character, and the Supreme Court also went on to characterize it as, quote, substantially a final decree for the purposes of appeal. This is on page 531 of the Greenough opinion. And from there, various courts, most notably the First Circuit in NRA 19 appeals, have held that appeals stemming from a final award of attorney's fees from a fully formed common fund are considered separately appealable. This wasn't a common fund situation. It was a common fund situation, Your Honor. How can you say that? The fees are going to be separately paid by the defendant, right? It's separately paid by the defendant pursuant to agreement by the parties, Your Honor, but everyone agreed, and the district court agreed, to treat this as a common fund situation because of Well, I don't understand why that is so. All sorts of issues come up when it's coming out of the common fund that need to be resolved promptly, whereas none of those issues are present here because since the defendant has agreed to pay separately, it doesn't matter whether it happens now or later. Well, certain issues certainly are not present because the defendant has agreed to separately pay the common fund, but it's really akin, in my opinion, to a case where a common fund has been created, and then the defendant has stipulated to pay any attorney's fees separate and apart from the common fund. All those cases treat those, to my knowledge, as a common fund type case. But again, more importantly, the district court's order is based entirely on common fund principles, and both parties agreed to treat this as if it were a common fund, $65 million. I don't think the parties can confer jurisdiction on a court. That's a question for us, not for the parties. Yes? Yes, Your Honor. And I'm having real trouble seeing how this fits within the rationale of the common fund doctrine. Well, if anything else, the common fund doctrine is the closest fit for this type of case because it's not statutory fee shifting here, Your Honor. It's not pursuant to the catalyst doctrine, and it's not pursuant to any contractual obligation to pay attorney's fees. So the closest fit for this type of case would be through common fund principles, in my opinion. Or, I'm sorry, go ahead. Go ahead. I was going to say, or we could rely on what has been the basic principle of federal law from time immemorial, namely, you save your appeals for after the case is over. If this court ultimately determines this is not a common fund appeal, yes, that would be the conclusion. Well, is the case law clear that there is a separate common fund exception to finality, or is it really something that would now be subsumed within the collateral order doctrine? Because a lot of the language in Greeno looks like collateral order. It's the same kind of rationale that's then later subsumed by the Cohen test. So should we treat this as just one doctrine governed by the current articulation from the Supreme Court in the Cohen line of cases? Well, Your Honor, if it were completely up to me, I would just make it as a subset of the collateral order doctrine, because logically it makes the most sense. But the case law for whatever— But the Supreme Court has clarified now in the collateral order doctrine that one of the elements is that it can't be effectively appealed from a final judgment. And I don't see any reason why this award of attorney's fees cannot be included in the final judgment that wraps up this litigation at its conclusion, and then you can file your appeal within the time after that judgment is entered. And then that seems to be the end of it under the collateral order doctrine. Why is that wrong? Well, because for one thing, there are many circumstances in which there may not be a final judgment in this case. This is a class—a certified class action. The DVM claims, of course, were not certified, but other claims were certified. Statistically, most class actions end in a settlement, so there wouldn't be a final judgment, and therefore it would be unclear whether an appeal could even be taken in that kind of circumstance. Also, if— Well, if the case is ended by a settlement, then presumably there's going to be a papering of that with the dismissal of the claims, and then you can make sure that that dismissal, whatever it is, includes the award of attorney's fees and have it entered by the court. That's just housekeeping at the end of the settlement. I suppose that's one way of doing it, but there are many permutations, Your Honor, and I confess I can't think of all of them right now, but I can think of the many permutations in which things are not perhaps effectively papered or they're left ambiguous or certainly Google takes the position later on that, well, actually, there either is no final judgment or you've waived your rights to appeal this particular fee order either because of the settlement itself or because of other intervening events that take place. I mean, here, for the collateral order doctrine purposes, this is a discrete issue. It's a discrete common fund. It's been fully formed, fully dispersed, collateral to the merits of this action. What's your response to their argument that, in fact, the entitlement to the fees at issue in this motion is not fully resolved and might be revisited again at another phase in the litigation? I think that's an incorrect statement, Your Honor, because this award of fees was pursuant solely to common fund principles. Basically, the district court analyzed under the common fund was there a class of beneficiaries? Could the benefits be accurately traced to those beneficiaries and could those benefits be properly allocated to those beneficiaries? That was the sole basis for the district court's award of fees in this action, and what Google has argued is that, well, there might be more fee orders down the line, but if there are more fee orders, that would be perhaps either because of a second common fund. Again, there's a certified class, but it's not with respect to this refund at issue here or pursuant to statutory fee shifting, neither of which would implicate a district court's decision to award fees pursuant, at this time, pursuant to this specific common fund under the specific facts that we had conferred a benefit to DVM advertisers, Your Honor. It seems to me that I would like to have you discuss our Rosenfeld versus the United States case. This circuit is, and we'd like to have you use our circuit cases if you can, but this circuit has routinely declined to review interim awards of fees. Rosenfeld seems to be still the law. Unless there's some reason we can't follow Rosenfeld, it seems to me we're bound to do so. Could you respond to me, please? Yes, Your Honor. Rosenfeld concerns statutory fee shifting, which, by definition, can't be fully adjudicated until the entire merits of the lawsuit have been resolved because, obviously, you have to have a prevailing party before you can shift fees onto them. This court has held in Fahey v. Calverley, this is a Ninth Circuit case from 1953, 208 F. 2nd 197, cited in our opening brief, that it had jurisdiction over a fee award to a special master because, quote, they constitute a final disposition of a fund in controversy to the extent of such payment. And this court in Fahey cited Greeno for the proposition that it had jurisdiction over this appeal of a disbursement to the special master from a fund. A special master does something and is finished. Here, you have the opposite situation. It goes on and on. I'm not sure your case really governs this case. Could you respond to that, please, the difference between a special master and attorneys representing parties? There's, I mean, there's obviously a difference, as Your Honor noted, but the similarity here is that our services to the DVM advertisers are concluded. There is no certified class. There's no possibility of us obtaining any further relief for them in this lawsuit with respect to that specific claim. So in that sense, just as— Well, you've got a written guarantee by the company they're going to pay them. Why wouldn't that be different from the Rosenfeld approach? Well, again, because Rosenfeld, it wasn't—didn't concern in a—well, Rosenfeld, again, was a statutory fee-shifting thing, so it requires a final adjudication on the merits to see whether or not one party owes fees to the other party. Under a common fund, an independent center be—can't—living center be—can't. You don't need—you don't need to have a determination of whether the defendant was liable or whether the defendant ultimately would have been required to pay out anything to the plaintiffs. You only need to determine— Excuse me. Do you have a case from the Ninth Circuit distinguishing Rosenfeld the way you would have it distinguished? No, Your Honor. Okay. Thank you. So turning to my point regarding the specific prejudice to Attrator, you know, I'll race through these points very quickly. Google's—the interrogatory—response to Interrogatory 24, which, as a refresher, that lays out Google's claims as to when it made the refund decisions as well as the various steps it took to carry out those decisions. You know, it's inadmissible hearsay based on this court's longstanding precedent and the precedent of other circuits. And if it were not allowed, numerous gaps appear in the district court's opinion as a result if it's not allowed to rely on that response. For example, there would literally be no evidence in the record as to whether—as to when Google made its decision to issue what it calls the Category 2 refunds. Google didn't even discuss the Category 2 refunds at all in its brief to the district court, and Google's employees don't discuss the Category 2 refunds in their respective declarations. The Category 2 refunds alone are worth more than $8 million, according to Google. This is ER 503, and the district court gave no consideration of this. If you're right about that and some of your other points along these lines, the remedy is then to vacate and send it back to the district court for further consideration, right? That's one remedy, yes, Your Honor. So, I mean, maybe I'm just a simple barefoot district judge, but if it's going to go back to the district court in any event, why is this a case where the collateral order doctrine really applies? The whole purpose of collateral order doctrine is that we're dealing with something that's really final. And while you say we have jurisdiction, your remedy is to send it back. It seems to me kind of impractical. Well, Your Honor, that's just one remedy. Certainly, this court could also issue a mandate for the district court to enter a ward along certain lines. That's what I believe it did in the Reyes v. Experian decision that came out last month. But any number of appeals involve orders which one party seeks a remand for redetermination. I don't think the results necessarily is a factor as to whether or not this court has jurisdiction pursuant to the collateral order doctrine or any other particular doctrine. I agree with that as a theoretical matter. But what I'm questioning is whether, as a practical matter, there's any reason why we should be reaching this now. Well, from our perspective, it should be reached because it's a logical consequence of the Supreme Court's decision in Greeno and because it's the right result. I see I'm running low on time, so I'll respectfully reserve the remaining amount of my time for rebuttal. Thank you, Your Honors. Thank you, Counsel. We'll hear next from Mr. Gutkin. May it please the Court, Jeff Gutkin, appearing on behalf of Google. Your Honors will be unsurprised to hear that I agree there is no jurisdiction for this appeal to be taken up at this time. There is no final judgment here. The purpose of 28 U.S.C. 1291 is to avoid piecemeal appeals of the same issues, promote efficiency, protect the independence of the district court. And you're looking at exactly the right cases. The cases that Google cites, the Rosenfeld decision, the American Iron Works decision, the Henry Eisen decision, these are all cases where midstream through the lawsuit. Someone has been awarded some fees, and then they try to appeal to this court. And the court says, you're midstream through the lawsuit. The question of how much you're going to receive in fees is not yet determined. Then look at that. And by the way, Mr. Gott keeps making the point those are fee-shifting cases. But this was the same result in the In Re Diet Drugs case out of the Third Circuit. That was a common fund case in which there were three separate funds. One of the funds was completely funded and was on the verge of being exhausted. And the lawyers tried to appeal. And the Third Circuit held, no, this is not right for appeal because those other funds are not concluded yet. So we don't know what the total amount of fees is going to be. Now contrast that with this common fund exception that counsel for appellants is trying to persuade you exists. The Greneau case and the Fahy case, those cases are over. In the Greneau case, there's absolutely no indication that the recipient of the fees, Mr. Vose, who had done all this work and gotten the estate out of the hands of the trustees and into the hands of the state, there was no indication that he was doing anything else. That case was finished. Similarly, in the Fahy case, which Mr. Gott just relied upon, the court had held the district court never had jurisdiction in the first place. So it had to reach the question of whether the special master should get those fees because it was bringing the case to a close by saying the district court never had jurisdiction. And the special master was poised to take money out of the property that was being held in the registry in connection with that. So Mr. Gott has no cases that are kind of midstream where there's a common fund, but yet an appeal is in it. So that's because there really is no common fund exception in the middle of a case. Let me just also mention 19 appeals, which they rely on very heavily in their papers. In 19 appeals, the case was divided into three phases. And the first two phases were entirely concluded. They awarded something like $220 million in damages for this hotel fire against the hotel and certain suppliers. So then there was a third phase that was solely against different defendants. It was against insurers. So the fact that the appeal was allowed in 19 appeals is because it was effectively like three different cases. Two of them were done, the liability and the merits were all decided, the fund was funded, and the attorneys were squabbling over who gets what out of the attorney's fees pool. And then the last was against different defendants and totally not done. Let me turn to the collateral order doctrine because I think there's one point that's vital to understand about Mr. Gott's claim that this fee question is finally decided. The collateral order doctrine, I'll just focus for the sake of time on prongs one and three. Prong one is that the ruling on the relevant issue has to be final. Prong three is, under the collateral order doctrine, that it has to be effectively unreviewable on appeal. How do we know that the ruling on Mr. Gott's fees is not final? Well, that's actually in part by virtue of the tactic that appellants counsel took in saying we can't separate our fees. They brought a class action on behalf of three different groups of Google advertisers and an individual claim on behalf of a company called Ad Trader that was not as an advertiser but as a different kind of customer of Google. So you effectively have four cases. But they went to the district court in this fee application and they said, we can't separate out our work on those, so you should pay us for everything we did, including for these other two classes of advertisers who are not the DBM advertisers that received refunds. They're different kinds of Google advertisers. And the work we did for our individual client who's bringing a claim not as an advertiser at all. The court said, okay, I'm going to give you a little bit of credit for what you did and award you some fees through May of 2018 for all of your work. So how does that relate to finality? Because what is absolutely not final is whether counsel for appellants will recover for their work after May of 2018 up through the date of the refunds. Because they have said their work is inseparable, then their work is linked to the ongoing case. That is, should they prevail for the certified AdWords class or should they prevail for their individual publisher client, they're going to seek these same fees again. Let me say this one more time. What the district court denied was fees from after May 2018 through September of 2019. And there is no sense in which that is a final denial of those fees for counsel. They said all their work on all the different cases is all commingled and can't be separated out. You can actually see this in the Napton Declaration at ER 94 and 95, and you can see it in their billing records, which you'll find at ER 663. None of the work is separated. So that means all of what was denied they can still seek again in the future should they prevail on any of their other cases, and that is not final, definitively not final. Let me now pivot to the third prong of the collateral order doctrine, which relates to the decision needs to be unreviewable. Look at the cases that they're citing. There are really just two contexts in which an application for fees of this kind will be found to be unreviewable, and neither of them remotely apply here. One is when you're talking about a common fund that is poised to be distributed and therefore exhausted. So if Mr. Gaugh had been awarded his $725,000 out of a common fund that Google was about to send out, he could appeal now because if he didn't appeal right now, then the money would be gone and the pool from which he might collect would be gone. But that's not the case here. Google has agreed to separately pay whatever fees he's awarded. Then the other cases are these cases that he cites that are mostly criminal cases against the United States, Copeland v. Ryan, U.S. v. Baker, U.S. v. Independent Medical Services. Those are cases where the money is going to go to an individual, or in the case of U.S. v. Baker, an indigent individual. And of course, if the money is delivered to an individual or an indigent individual, and then there's a later appeal, then you might not be able to collect the money again. So that is, in diet drugs, they use the phrase, appeal delayed is appeal denied, or review delayed is review denied. And that just simply doesn't apply here. Needless to say, when this case is over, the fee award given to appellants counsel will be merged into the final judgment, and Google is a very creditworthy entity that will be able to satisfy any fee award that counsel for appellants may someday obtain on appeal. Mr. Gott talked in this respect about how there may not be a judgment, and Google could take steps to ensure there is no final judgment so he can't appeal. I think your honors correctly questioned that. I don't know what he means by that. Even were there to be a settlement, there would still be an entry of the settlement and a judgment in the action, and then it would become ripe for appeal again. I mean, Mr. Gott filed a 23-F petition denying, in relation to the denial of class certification for the DBM class and for another one of the advertiser classes. That 23-F petition was denied. Obviously, that will also become ripe again when the case is over and final judgment is entered. To me, frankly, your honors, I was surprised even that we got to this hearing because I thought it was so abundantly clear, and after your honors called for an order to show pause on jurisdiction, I thought it was abundantly clear or undeniably clear in the case law that you don't have jurisdiction. This is an interim fee award in the middle of a case where he stands to collect the same money again or he will try to collect the same money again that the court has denied him in this order. One last point, and then I'll move on a bit to the evidentiary issues. Never, you will not see anywhere in plaintiff's counsel's papers have they disclaimed what we keep saying, which is they may seek these same monies again. They've never said, no, we won't. We're never going to have a right to seek that again because that's how they've set this up. They've said all their work is blended, so if they prevail for the AdWords class, they'll try to get this money back. And I think with that, unless there are questions, I'll move on from the jurisdictional issue to the evidentiary issues. On the evidentiary issues, I think this is kind of a strange argument. We had a discussion with the court about whether there'd be an evidentiary hearing on this fee petition, and the court sort of said, well, I'll leave it up to the parties. You let me know if you want an evidentiary hearing. Appellant's counsel chose to submit just based on their motion and their declarations. They never requested an evidentiary hearing, but now they're kind of trying to have a gotcha where they say that we were limited to trial-ready evidence, and it's just simply not so. I mean, I'll focus on the interrogatory response that we have cited and your honors are familiar with. There's substantial case law stating that in nondispositive motions, the district court is free to consider evidence that is not yet trial-ready, that is not yet admissible for trial, and this happens routinely. So the idea that our response to interrogatory 24 is absolutely out of bounds is not true, and if you will look at the cases that appellants cite in support of this position, I'm referring to, for example, the Haskell case, the S&S logging case, Hills v. Ears, these are all Ninth Circuit decisions, they're trial and summary judgment cases only. They don't cite any cases that are like a motion for attorney's fees, a nondispositive motion for attorney's fees that hold that evidence has to be trial-ready, that we would be limited strictly to admissible evidence. Let me also just talk for a moment about their claim that there's inadequate foundation for the knowledge of Evan Fisher, who verified interrogatory response 24, which has gotten so much attention. First of all, in the Bartholomew case, if I'm remembering the correct name, this court held, that's a Ninth Circuit 1990 decision, this court held that the foundation for a witness's knowledge can be established by the content of the declaration or affidavit itself, and in this interrogatory response, Mr. Fisher says he was the project manager for these two categories of DBM refunds. He was the person who was in charge of executing on the order to send out the refunds, and he explains all the work that he and his team did during 2018 to get the refunds ready to go out. He says they had to study the tax and accounting implications in country-by-country basis, that they had to build internal systems at Google to be ready to send this out, but there's actually further foundation for Mr. Fisher's knowledge in the record that I want to make sure I point out to your honors. There are two different deponents that Mr. Gaw asked who was in charge of those DBM refunds. That's Alice Yu and Kate Tong. If you look at ER 605 and ER 617, in response to those questions, both of those deponents answered Evan Fisher, so there's no question that the record is chock full of foundation for Mr. Fisher's knowledge for the facts that he swore to in his interrogatory response. All right, counsel, your time has expired. Thank you very much, your honors. All right, and we'll hear rebuttal now from Mr. Gaw. We can't hear you. You're on mute. My apologies. Thank you, your honors. With respect to the disclaimer issue, I thought it was clear in the papers that we would not be seeking, the district court nor us would be awarding, you know, fees on double fees, essentially. We certainly would not try to claim any time for which we were already compensated. Where in the record does it say that you would not seek, in connection with the AdWords claims, you would not seek any of the same fees from the time period from May 2018 to the 2019 cutoff here? I don't think we specifically stated like that. We just pointed out in the briefs that there are already mechanisms for the district courts to ensure that you're not double compensated for the same time. You know, there's, we, we are so like, double compensated. But his point is that, you know, you've claimed that the time couldn't really be allocated and was relevant to the various claims in the case. But that does leave open the possibility that if you were to prevail on AdWords, you would come back and say, well, here's the time we had in this period. And although it was also an issue in the other, it supported these claims. So we should get, we should get that, you know, for AdWords. I understand that, Your Honor. And just to clear up any ambiguity, I will say, you know, on the record here, no matter what date cutoff is ultimately decided, whether this fees order is upheld or reverse remanded, we will not seek, if we are, if we're in position to apply for another fee award, we will not seek recovery for any time prior to that cutoff. It would only be, you know, work done subsequent to the cutoff. So I'll just make that very clear. And then, well, I, it looks like I'm out of time. So if there are any other questions, I'm happy to answer them. Otherwise, you know, I respectfully submit. All right. Thank you, counsel. Thank you. All right. The case is submitted and we, court will be in recess for five minutes.
judges: Wallace, Rakoff, Collins